1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON
8
CHRISTOPHER BLOSSER,                    No. 1:15-CV-03125-JTR
9
            Plaintiff,                  ORDER GRANTING PLAINTIFF'S
10                                       MOTION FOR SUMMARY
            v.                           JUDGMENT
11
12
CAROLYN W. COLVIN,
13 Commissioner of Social Security,
14
            Defendant.
15
16          **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

17 No. 16, 23.  Attorney D. James Tree represents Christopher Blosser (Plaintiff);

18 Special Assistant United States Attorney Summer Stinson represents the

19 Commissioner of Social Security (Defendant).  The parties have consented to

20 proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

21 record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's

22 Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

23 Judgment; and **REMANDS** the matter to the Commissioner for additional

24 proceedings pursuant to 42 U.S.C. § 405(g).

25                              **JURISDICTION**

26          Plaintiff filed applications for Supplemental Security Income (SSI) and

27 Disability Insurance Benefits (DIB) on May 18, 2011, alleging disability since

28 March 26, 2010, due to chronic pain, degenerative disk disease, recurrent hernia,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

severe carpal tunnel, and anxiety.  Tr. 195-201, 202-208, 218, 222.   The applications were denied initially and upon reconsideration.  Tr. 114-121, 123-134.  Administrative Law Judge (ALJ) M.J. Adams held a hearing on November 6, 2013, and heard testimony from Plaintiff and vocational expert Ann Jones.  Tr. 36-75.  The ALJ issued an unfavorable decision on November 22, 2013.  Tr. 23-30.  The Appeals Council denied review on May 21, 2015.  Tr. 1-6.  The ALJ's November 22, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on July 17, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 36 years old at the alleged date of onset.  Tr. 195.  He completed one year of college in 2008.  Tr. 223.  He last worked in March of 2010, and stated that he left due to his conditions.  Tr. 222.  His work history includes the jobs of apprentice plumber, line mechanic, lube service technician, mechanic, and manager of a car wash.  Tr. 223.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 22, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 26, 2010, the alleged onset date.  Tr. 25.

At step two, the ALJ determined Plaintiff had the following severe impairments:  degenerative disc disease, carpal tunnel syndrome, and hernias.  Tr. 25.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 26.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of light work with the following limitations:

> The claimant could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently.  He could stand and/or walk for about six hours in an eight-hour workday (with normal breaks).  The claimant could sit for about six hours in an eight-hour workday (with normal breaks).  He could do only occasional handling and fingering with his dominant right hand due to limitations from carpal tunnel syndrome.

Tr. 27.  The ALJ identified Plaintiff's past relevant work as airframe and power plant mechanic helper, automobile mechanic, carwash supervisor, and plumber apprentice and concluded that Plaintiff was not able to perform this past relevant work.  Tr. 29.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of tanning salon attendant, sandwich board carrier, usher, boat rental clerk, "counter clerk, photofinishing," and bakery worker.  Tr. 30.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged date of onset, March 26, 2010, through the date of the ALJ's decision, November 22, 2013.  Tr. 30.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's credibility; (2) failing to make a proper step two determination; (3) failing to properly weigh medical source opinions; and (4) failing to make a proper step five determination.

**DISCUSSION**

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 16 at 14-16.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 27-28. The ALJ reasoned that Plaintiff was less than fully credible because his alleged physical limitations were inconsistent with his daily activities and the objective medical evidence. Tr. 28.

**1.    Daily Activities**

The ALJ's first reason for finding Plaintiff less than fully credible, that Plaintiff's activities were inconsistent with the alleged level of physical limitation

is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

The ALJ found that despite Plaintiff's alleged limitations, he was able to sweep out his garage and move boxes. Tr. 28 *citing* Tr. 647. On March 2, 2013, Plaintiff presented to Yakima Valley Memorial Hospital Emergency Room with complaints of neck pain. Tr. 651-655. Plaintiff reported that he had swept his garage and moved some boxes weighing less than five pounds on March 1, 2013, and he was diagnosed with a neck spasm. Tr. 652-653. On March 3, 2013, Plaintiff returned to the Emergency Room because his neck pain had gotten worse. Tr. 646-650. The ALJ failed to state how sweeping and lifting less than five pounds resulting in two trips to the Emergency Room is inconsistent with Plaintiff's testimony.

The ALJ found that despite his alleged limitations, Plaintiff was able to play paintball based on a November 12, 2012, medical record discussing a paintball injury. Tr. 28 *citing* Tr. 588. However, reviewing the record as a whole, it is clear that the paintball injury did not occur in November of 2012. It is first mentioned in May of 2010 and is consistently listed under Plaintiff's "active problems" in records from Yakima Urology Associates. Tr. 412, 415, 417, 420, 423, 428, 432, 437, 443, 592, 600. In June of 2012, Dennis M. Gaskill, M.D., listed Plaintiff's

complaints and then stated, "This is [*sic*] been going on for a number of years.  All of his issues were secondary to a paint ball and [*sic*] injury."  Tr. 594.  That same day and on November 12, 2012, the undetermined paint ball gun injury was listed under Plaintiff's "current problems."  Tr. 596, 588.  While a remote paint ball gun injury is referenced throughout the record, there is actually no reference to Plaintiff engaging in paintball activities during the relevant time period.  Therefore, substantial evidence does not support the ALJ's determination that Plaintiff was capable of playing paintball during the relevant time period.  Therefore, the ALJ's reason does not meet the specific, clear and convincing standard.

The ALJ also noted that Plaintiff's girlfriend stated that he was able to drive, occasionally visit friends, watch television, and occasionally pick up his children from school.  Tr. 28 *citing* Tr. 240-247.  The ALJ determined that these activities were consistent with light work.  Tr. 28.  However, the Court finds that these activities are not evidence of ability to sustain light work at a full-time level. Furthermore, the ALJ lacks the specificity in his determination required under *Orn* and *Burch*.  Therefore, this reason fails to meet the specific, clear and convincing standard.

## 2.      Inconsistent with Objective Medical Evidence

The ALJ's second reason for finding Plaintiff less than fully credible, that Plaintiff's alleged physical limitations were inconsistent with objective medical evidence is not a specific, clear, and convincing reason to undermine Plaintiff's credibility.   Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Here the ALJ failed to state what medical evidence undermined Plaintiff's reported symptoms and resulting limitations.  Therefore, this reason fails to meet the specific, clear and convincing standard.

In conclusion, the ALJ erred in his credibility determination.  While there

1  may be legitimate reasons within the record to find Plaintiff less than fully

2  credible, the ALJ did not cite any legally sufficient reasons in his decision.

3  Therefore, the case is remanded for additional proceedings with instructions for the

4  ALJ to make a new assessment as to whether Plaintiff's subjective symptom

5  statements are consistent with the record as a whole.[1]

6  **B.    Step Two**

7         Plaintiff challenges the ALJ's step two determination, asserting that the ALJ

8  erred in finding that Plaintiff's depression and anxiety were not severe.  ECF No.

9  16 at 10-14.

10        Step two is "a de minimis screening device [used] to dispose of groundless

11  claims."  *Smolen*, 80 F.3d at 1290.  An impairment is "not severe" if it does not

12  "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§

13  404.1521(a), 416.921(a).  "An impairment or combination of impairments can be

14  found not severe only if the evidence establishes a slight abnormality that has no

15  more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at

16  1279.  "[T]he ALJ must consider the combined effect of all of the claimant's

17  impairments on [his] ability to function without regard to whether each alone was

18  sufficiently severe."  *Id*. at 1290.

19        Here, the ALJ found that Plaintiff's mental health impairments were not

20  severe by giving significant weight to the majority of the opinion from Elsa

---

22  [1]On March 16, 2016, S.S.R. 16-3p, "Evaluation of Symptoms in Disability

23  Claims," became effective, eliminating the term "credibility" from the Social

24  Security Administration's policy, and clarifying "adjudicators will not assess an

25  individual's overall character or truthfulness."  The ALJ's November 2013

26  decision came more than two years before S.S.R. 16-3p.  Therefore, he could not

27  have employed the new S.S.R.  Nevertheless, upon remand, the ALJ should

28  address S.S.R. 16-3p as part of the review regarding Plaintiff's alleged symptoms.

Haloman, M.D., but rejecting the portion of her opinion, which noted that claimant had a history of difficulties getting along with others. Tr. 26. On September 29, 2013, Dr. Haloman completed a psychological evaluation and opined that Plaintiff had the ability to perform detailed and complex tasks, he could perform work activities on a consistent basis without special or additional instructions, he had no cogitative problems, and he could maintain regular attendance and complete a normal workday and workweek without interruptions. Tr. 667. Additionally, Dr. Haloman noted that while he could accept instructions from supervisors cognitively, he showed a severe problem with authority, a significant degree of difficulty with interpersonal relations, and had a propensity to move toward violence when he was challenged or perceived he was insulted. *Id*. Based on this, Dr. Haloman opined that Plaintiff could not interact with coworkers and the public in a proper manner, stating "[h]e was hostile, using profanity, was difficult to redirect and generally inappropriate during this assessment." *Id*. Dr. Haloman further opined that Plaintiff was unable to deal with the usual stress encountered in the workplace, "particularly because he finds it incredibly stressful to be around others. This is notable today on the exam, as he was difficult to interact with and was sarcastic and flippant." *Id*. Despite these statements, Dr. Haloman noted that Plaintiff was able to accept instructions from her on the day of the exam. *Id*.

The ALJ recognized Dr. Haloman's findings, but found that there was no evidence that Plaintiff's mental health impairments resulted in limitations that would last twelve months as required by the Social Security Act. Tr. 26. Records from Central Washington Comprehensive Mental Health describe Plaintiff as "irritable, angry, frustrated, and embittered with his current medical issues and pain management." Tr. 675. The records include a note that Plaintiff presented with irritable mood with agitated affect. Tr. 686. However, these records start on October 15, 2012, and end March 5, 2013, and represent only an initial evaluation and a single individual therapy session. Tr. 673-688. Outside of these records and

Dr. Haloman's report, the medical evidence offers no additional insight into Plaintiff's inability to interact with others. The ALJ is accurate that his initial evaluation with Central Washington Comprehensive Mental Health on October 15, 2012, and his evaluation with Dr. Haloman on September 29, 2013, are less than twelve months apart.

Plaintiff argues that his testimony regarding a history of losing jobs due to his inability to interact appropriately with others supports Dr. Haloman's opinion. ECF No. 16 at 13. At the hearing, Plaintiff testified that he lost his last four jobs due to arguing with coworkers and supervisors. Tr. 50-51.

After reviewing the record as a whole, the Court finds that there is evidence to support both the ALJ's determination and Plaintiff's assertions regarding mental health impairments and their severity at step two. While these situations are usually resolved in the favor of the ALJ, *See Tackett*, 180 F.3d at 1097 (if the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ), here Plaintiff's testimony is to be redetermined on remand. Therefore, the ALJ is instructed to address mental health impairments at step two on remand as well.

**C.    Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Dr. Haloman, Edward Liu, ARNP, Nancy D. Schwarzkof, ARNP, and Maria Mondragon, MSW. ECF No. 16 at 5-10.

Considering the case is being remanded for new credibility and step two determinations, the ALJ is further instructed to readdress the medical source opinions in the record on remand.

**D.    Step Five**

Plaintiff challenges the ALJ's step five determination asserting that the ALJ erred by failing to meet his burden by not showing there were jobs that exist in significant numbers in the national economy which Plaintiff could perform. ECF

No. 16 at 16-20.

At step five, the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a claimant can do. *Tackett*, 180 F.3d at 1099; 20 C.F.R. § 404.1566(b), 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications."). In identifying the requisite work that "exists in the national economy," an ALJ may rely on the Dictionary of Occupational Titles (DOT) and vocational expert testimony. 20 C.F.R. §§ 404.1566(d), (e); 416.966(d), (e) (agency will take administrative notice of "reliable job information" including that from vocational experts); S.S.R. 00-4p (agency uses vocational experts at steps four and five of the sequential analysis).

In forming his step five determination, the ALJ relied on the testimony of a vocational expert who referenced material from the DOT. Tr. 29-30. Based on the ALJ's residual functional capacity assessment, the vocational expert testified that an individual with the same limitations as presented in the residual functional capacity determination could perform the jobs of tanning salon attendant with 27,400 jobs nationally and a sandwich board carrier with 14,237 jobs nationally. Tr. 58-60.

The ALJ then asked the vocational expert about four additional jobs: usher with 100,000 jobs nationally, boat rental clerk with just under 500,000 jobs nationally, "counter clerk, photo finishing" with 498,000 jobs nationally, and "bakery worker, conveyor line" with 288,470 jobs nationally. Tr. 64-66. In response to the job of usher, the vocational expert testified that ushers were required to stand for eight hours in an eight-hour workday, which was inconsistent with the ALJ's hypothetical which included standing for only six hours in an eight-hour work day. Tr. 64. Despite testimony that the job was inconsistent with the ALJ's hypothetical, the ALJ used this job as part of his step five determination.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

This was error.  In the event a step five determination is necessary on remand, the ALJ is precluded from considering usher as a possible position for an individual who can only stand or walk for six hours out of an eight-hour workday.

As for the remaining jobs, including tanning salon attendant, sandwich board carrier, boat rental clerk, "counter clerk, photo finishing," and "bakery worker, conveyor line," the vocational expert testified that the national numbers provided were based on data from the Bureau of Labor Statistics' Standard Occupational Classification (SOC) code system.  Tr. 60, 65, 68-69.  The SOC provides numbers of jobs available nationally based on a code system, which may include more than one individual job title per code.  For example, the code associated with tanning salon attendant includes a total of 18 job titles, only one of which is the title of tanning salon attendant.  Tr. 60.  Likewise, the SOC code for usher includes 5 job titles, the code for boat clerk includes 24 job titles, and the code for counter clerk includes too many job titles for the vocational expert to count at the hearing.  Tr. 68-70, 73.

Additionally, the vocational expert testified that about eighteen percent of the job numbers at the national level represents part-time positions.  Tr. 61-62, 69-70.  And that the numbers of sandwich board carrier jobs would be reduced by the ALJ's limitation to standing only six hours a day and not eight hours a day.  Tr. 63.  Based on the above testimony of the vocational expert, Plaintiff argues that the ALJ failed to meet his burden of showing there were jobs that exist in significant numbers in the national economy which Plaintiff could perform because the vocational expert was unable to testify to the numbers of jobs for each individual job title.

Plaintiff raises a valid issue concerning the current process by which a vocational expert may determine the number of jobs that exist in the national economy.  While there does not appear to be a Ninth Circuit opinion directly addressing this issue, other circuit courts have weighed in.  *See Alaura v. Colvin*,

797 F.3d 503, 507 (7th Cir. 2015); *Guiton v. Colvin*, 546 Fed. Appx. 137, 143-45 (4th Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 446 (2nd Cir. 2012). The Second Circuit Court of Appeals explained the relationship between the DOT and sources such as the SOC code system:

> The DOT gives a job type a specific code—for example, "295.467-026 Automobile Rental Clerk"—and establishes, among other things, the minimum skill level and physical exertion capacity required to perform that job. Because of the detailed information appended to each DOT code, the codes are useful for determining the type of work a disability applicant can perform. In fact, the DOT is so valued that a [vocational expert] whose evidence conflicts with the DOT must provide a "reasonable explanation" to the ALJ for the conflict. *See Social Security Ruling (SSR) 00–4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 (Dec. 4, 2000).
>
> The DOT, however, just defines jobs. It does not report how many such jobs are available in the economy. …
>
> ….
>
> [The] Standard Occupational Classification System ("SOC") code, [is] a new system the Bureau of Labor Statistics has embraced to replace the DOT code regime. SOC codes, however, are not useful for disability proceedings because they do not contain the same detailed occupational information as DOT codes. Thus a [vocational expert] must use some method for associating SOC-based employment numbers to DOT-based job types. The problem, however, is that DOT codes are much more granular than SOC codes ….

*Brault*, 683 F.3d at 446. The only reliable statistics available are for broad categories of jobs, which may encompass not only the DOT code chosen by the vocational expert to represent a job, but also many other jobs. *Alaura*, 797 F.3d at 507 ("The problem appears to be that the only reliable statistics are census data for broad categories of jobs, rather than for jobs in the narrower categories that the applicant for benefits is capable of doing.").

Because of the inherent defect with the system, as described in *Brault*, Plaintiff raises a reasonable inquiry about the reliability of the numbers presented by the vocational expert at the hearing. Plaintiff argues that, because the vocational expert acknowledged that the numbers would be reduced, the ALJ failed to meet his required step five burden. However, the vocational expert testified that the total numbers of jobs available at the national level could be divided by the number of job titles under SOC code. Tr. 60-61, 71, 73. Then that number can be reduced by 18% to remove those jobs that are only part-time. Tr. 70. So tanning salon attendant would be 27,400 jobs divided by 18 job titles and reduced by 18%, or roughly 1,248 jobs nationally. Tr. 61. For boat rental clerk, 500,000 jobs divided by 24 job titles and reduced by 18%, or roughly 17,083 jobs nationally. Tr. 70-71. The vocational expert did not give any means for reducing the number of jobs for the titles of sandwich board carrier because she stated an additional reduction due to the number of hours standing but did not quantify the reduction. For counter clerk and bakery worker, she did not give the exact number of job titles in the SOC codes. However, this Court finds that of the two jobs for which numbers were able to be derived, there are sufficient jobs in the national economy Plaintiff could perform and the ALJ met his burden.

Plaintiff argues that the mathematics of dividing the total number of jobs nationally with the number of job titles in the SOC codes is "preposterous" under *Alaura*. ECF No. 16 at 19. However, here, the vocational expert testified that would be the method used to come to the number of jobs nationally per job title. Tr. 71. The Ninth Circuit, has held that an ALJ's reliance on testimony the vocational expert gives in response to a hypothetical is proper. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)).

1    In conclusion, the ALJ may have erred in his reliance on the number of jobs

2    held nationally based on the total numbers initially given by the vocational expert,

3    but the error did not result in harm as the ALJ still met his burden.  While there

4    may be inherent flaws in the DOT being relied upon for job descriptions and the

5    SOC being relied upon for job numbers, a claimant's act of pointing out these

6    flaws is not sufficient to show the ALJ failed to meet his burden.  The ALJ meets

7    this burden by relying on the vocational expert's testimony.

8        Upon remand, should there be a question regarding the number of jobs

9    available nationally for a specific job title, the ALJ is directed to ask the vocational

10   expert to extrapolate the number of jobs for each job title that matches the ALJ's

11   hypothetical.  *See Haile v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-01996, 2016

12   WL 614428 (D. Or. Feb. 14, 2016).

13                              **REMEDY**

14       The decision whether to remand for further proceedings or reverse and

15   award benefits is within the discretion of the district court.  *McAllister v. Sullivan*,

16   888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

17   where "no useful purpose would be served by further administrative proceedings,

18   or where the record has been thoroughly developed," *Varney v. Secretary of Health*

19   *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

20   by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

21   (9th Cir. 1990).  *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

22   (noting that a district court may abuse its discretion not to remand for benefits

23   when all of these conditions are met).  This policy is based on the "need to

24   expedite disability claims." *Varney*, 859 F.2d at 1401.  But where there are

25   outstanding issues that must be resolved before a determination can be made, and it

26   is not clear from the record that the ALJ would be required to find a claimant

27   disabled if all the evidence were properly evaluated, remand is appropriate.  *See*

28   *Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211

F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to determine whether Plaintiff's subjective symptom statements are consistent with the record as a whole, make a new step two determination, reweigh medical opinions, and clarify numbers of jobs available in the national economy at step five.  Additionally, the ALJ is instructed to call a vocational expert to testify at any subsequent proceedings.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.     Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 8, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16